UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DWIGHT RODGER GRAVES, JR.,

                    Plaintiff,

v.

CORRECTIONAL MEDICAL SERVICE
and DR. DEASIS,

                    Defendants.

_____

**REPORT AND
RECOMMENDATION**

11-CV-01005(A)(M)

        This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings [7].[1] Before me are defendants' motions for leave to belatedly file an Answer [64] and for summary judgment [63]. For the following reasons, I recommend that the motions be granted.

## BACKGROUND

        Plaintiff, an inmate, commenced this 42 U.S.C. §1983 action *pro se*, alleging that defendants were deliberately indifferent to his medical needs, in violation of the Eighth Amendment. Complaint [1]. Plaintiff alleges that while incarcerated at the Monroe County Jail, he underwent surgery in June of 2011 "for blood clots in [his] legs", and that upon his return to the Monroe County Jail, defendant Anselmo Deasis, M.D., failed to "monitor [his] cumidin [*sic*] intake in [his] blood every week", resulting in another blood clot on or about August 24, 2011 which required another surgery on September 4, 2011. Complaint [1], First and Second Claims.[2]

_____

    [1]        Bracketed references are to the CM/ECF docket entries.

    [2]        Defendant Sheriff O'Flynn was previously dismissed from the case. *See* Hon. Michael A. Telesca's March 13, 2012 Order [3].

Defendants initially moved [6] to dismiss the Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) for plaintiff's failure to exhaust administrative remedies. By Report and Recommendation dated February 27, 2013 [16], I recommended that defendants' motion be denied, and my recommendation was adopted by Judge Arcara on June 6, 2013 [20]. Thereafter, I conducted a preliminary pretrial conference on July 18, 2013, and entered a Case Management Order ("CMO") [27], which was later amended [50] upon the consent of the parties on January 14, 2014. Pursuant to the Amended CMO [50] the fact discovery deadline was April 16, 2014 (id., ¶1).

Before the expiration of the fact discovery period, plaintiff moved to compel certain information from defendant Correctional Medical Care, Inc. ("Correctional Medical") [53].[3] Defendants opposed that motion, and in the alternative requested that discovery be stayed related to Correctional Medical pending determination of plaintiff's deliberate indifference claim against Dr. Deasis [54]. At a conference conducted on March 10, 2014 the parties agreed that defendants would file their motion for summary judgment directed at the deliberate indifference claim by April 25, 2014, and I denied plaintiff's motion to compel, without prejudice. *See* March 13, 2014 Text Order [60].

On March 28, 2014 defendants filed their Answer [61] and motion for summary judgment [63]. In response, plaintiff filed an Objection [62] requesting that the untimely Answer be stricken and that judgment be awarded in his favor. Defendants' motions ensued.

---

[3] The Complaint incorrectly identifies Correctional Medical as Correctional Medical Service. *See* Answer [61].

**ANALYSIS**

**A.      Defendants' Motion for Leave to Serve a Late Answer**

Defendants move [64] pursuant to Fed. R. Civ. P. ("Rules") 6(b) and 55(c) for leave to file a late Answer.  "[A] motion to file a late answer is closely analogous to a motion to vacate a default" since "the party seeking to answer is given the same opportunity to present mitigating circumstances that it would have had if a default had been entered and it had then moved under Rule 55(c) to set it aside."  Pension Benefit Guaranty Corp. v. Canadian Imperial Bank of Commerce, 1989 WL 50171, *2  (S.D.N.Y. 1989).  "The practical effect of refusing to allow [the defendant] to answer is to enter a default against him."  Id.  In determining whether to grant a motion for leave to serve a late Answer, "[t]he relevant factors include whether the failure to answer was willful, whether [the defendant] has a meritorious defense, and whether [the plaintiff] would be prejudiced by allowing [ the defendant] to enter the proceedings at this late date".  Id.

As to the first factor, defendants explain that due to the confusion caused by a transfer in responsibility between attorneys for this file, the Answer was not timely filed. Defendants' Memorandum of Law [64-2], p. 5.  Since "[c]lerical errors . . . fall short of willful acts", Basile v. Wiggs, 2009 WL 1561769, *5 (S.D.N.Y. 2009), this factor weighs in favor of granting the motion.

Concerning the second factor, "delay standing alone does not establish prejudice". Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993). Instead, "delay is prejudicial if it engenders a loss of evidence, discovery problems, or the opportunity for fraud and collusion".

Pension Benefit Guaranty Corp., 1989 WL 50171 at * 4.  Here, plaintiff argues that if

"defendants are allowed to file it brings a prejudice of introducing new facts not originally

involved in the cases as well as an injustice".  Plaintiff's Response [70], ¶6.  However, as

defendants note, it is not evident what "new facts" could be introduced  by permitting defendants

to file their Answer.  Defendants' Reply [72], p. 3.  Plaintiff also does not contend that the

Answer has disclosed unanticipated defenses or that defendants have unexpectedly denied certain

facts.  Therefore, this factor also weighs in favor of defendants.

Finally, as discussed below, I conclude that defendants have a meritorious defense

Therefore, I recommend that their motion for leave to serve a late Answer be granted.


**B.**     **Defendants' Motion for Summary Judgment**

**1.**     **The Summary Judgment Standard**

"The standards governing summary judgment are well-settled.  Summary

judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law.  The party

seeking summary judgment has the burden to demonstrate that no genuine issue of material fact

exists.  In determining whether a genuine issue of material fact exists, a court must examine the

evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.

Summary judgment is improper if there is any evidence in the record that could reasonably

support the jury's verdict for the non-moving party."  Ford v. Reynolds, 316 F.3d 351, 354 (2d

Cir. 2003).

However, "[w]hen the moving party has carried its burden . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial* . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

If the party opposing summary judgment "shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declaration or to take discovery; or (3) issue any other appropriate order". Rule 56(d). To obtain this relief, the party opposing summary judgment must establish: "(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." Miller v. Wolpoff & Abramson, LLP., 321 F.3d 292, 303 (2d Cir.), cert. denied, 540 U.S. 823 (2003).

Rule 56(d) "is a safeguard against premature grants of summary judgment and should be applied with a spirit of liberality". Holmes v. Lorch, 329 F.Supp.2d 516, 529 (S.D.N.Y. 2004); Delphi Delco Electronics Systems v. M/V NEDLLOYD EUROPA, 324 F.Supp.2d 403, 417-18 (S.D.N.Y.2004) (Rule 56(d) "is an important safeguard against

improvident or premature motions for summary judgment, courts generally avoid overly

technical rulings under this subdivision and apply it with a spirit of liberality"). This is

especially true where a party has not had an opportunity to conduct any discovery. "The

nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary

judgment . . . . The nonmoving party must have 'had the opportunity to discover information that

is essential to his opposition' to the motion for summary judgment." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 250 n. 5 (1986).


        **2.**        **Defendants Failure to Comply with LR Civ. P. ("Local Rule") 56(b)**

        The Second Circuit has required "that *pro se* litigants have actual notice, provided

in an accessible manner, of the consequences of the *pro se* litigant's failure to comply with the

requirements of Rule 56." Irby v. New York City Transit Authority, 262 F.3d 412, 414 (2d Cir.

2001). Local Rule 56(b), which implements the Second Circuit's decision in Irby, provides that

"[a]ny party moving for summary judgment against a pro se litigant shall file and serve with the

motion papers a 'Notice to *Pro Se* Litigant Regarding Rule 56 Motion For Summary Judgment'

in the form provided by the Court. Failure to file and serve the form notice shall result in denial

of the motion, without prejudice to proper renewal".

        Although defendants' motion for summary judgment does not appear to be

accompanied by the required notice, I conclude that this does not mandate the denial of their

motion. *See* Rule 61 ("At every stage of the proceeding, the court must disregard all errors and

defects that do not affect any party's substantial rights."). The Second Circuit has held that

where the notice is not provided by the movant that "the district court should promptly provide

the *pro se* with such required notice.  Irby, 262 F.3d at 414.  It has also recognized that providing a  *pro se* litigant with notice of the requirements of Rule 56 is not required where "the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment." Id. *See* Wright v. Esgrow, 2013 WL 1826053, *6   (W.D.N.Y. 2013) ("the absence of an Irby notice need not necessarily result in the vacatur of a grant of summary judgment where the pro se litigant had a 'clear understanding' of the consequences of failing to comply with Rule 56").

Here, both the CMO ([27], ¶6) and Amended CMO ([50], ¶4) stated that "If the dispositive motion is filed against a party who is appearing in this action *pro se*, the moving party must include the following advisement:

> **"PLEASE BE ADVISED**, that pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, when a motion for summary judgment is made and properly supported, you may not simply rely upon the complaint [and amended complaint, if one has been filed], but you must respond, by affidavits or as otherwise provided in the rule, setting further specific facts showing that there are genuine issues of material facts for trial.  Any factual assertions in our affidavits will be accepted by the Court as being true unless you submit affidavits or other documentary evidence contradicting our assertions.  If you do not respond to [the moving party's] motion as described above, summary judgment, if appropriate, may be entered against you.  **If summary judgment is entered against you, your case against the moving party will be dismissed.**

> **PLEASE BE FURTHER ADVISED**, that pursuant to Local Rule 56 of the Western District of New York, you must include a separate, short, concise statement of any material facts as to which you contend there exists a genuine issue for trial.  In the absence of such a statement, all material facts set forth in the moving party's Local Rule 56 Statement will be deemed admitted."  (emphasis in original).

Thus, plaintiff was on notice of the requirements for properly opposing a motion

for summary judgment.  His understanding of these requirements is further demonstrated by his

vigorous opposition  to defendants' motion, which responds to each of their statements of

material fact and is supported by citation to the attached medical records.  *See* Tota v. Bentley,

379 Fed.Appx. 31, 33-34 (2d Cir. 2010) (Summary Order) (affirming the district court's finding

of harmless error where the *pro se* plaintiff "vigorously opposed the defendants' motion for

summary judgment" notwithstanding the failure to be provided with an Irby notice); Wright,

2013 WL 1826053 at *6 ("it appears from Plaintiff's responsive papers, including a detailed

affidavit . . . with exhibits, that he understood that Defendant's motion was for summary

judgment").


**2.      Eighth Amendment:  Deliberate Indifference to Plaintiff's Medical Needs**

In order to establish a violation of the Eighth Amendment arising out of

inadequate medical treatment, plaintiff must prove that defendants acted with "deliberate

indifference to [his] serious medical needs".  Estelle v. Gamble, 429 U.S. 97, 104 (1976).

The "deliberate indifference" standard has both objective and subjective components.  Hathaway

v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994), cert. denied, 513 U.S. 1154 (1995).

To satisfy the objective component, the alleged medical need must be "sufficiently

serious."  Id..  A "sufficiently serious" medical need is "a condition of urgency, one that may

produce death, degeneration, or extreme pain."  Id.  "Factors that have been considered include

the existence of an injury that a reasonable doctor or patient would find important and worthy of

comment or treatment; the presence of a medical condition that significantly affects an

individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

To satisfy the subjective component, plaintiff must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). "The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. See also Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093 (2005) (likening the necessary state of mind to "the equivalent of criminal recklessness"). In order to be found "sufficiently culpable," the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

"The totality of an inmate's medical care must be considered in order to determine whether a prison official has acted with deliberate indifference to serious medical needs". Wandell v. Koenigsmann, 2000 WL 1036030, *3 (S.D.N.Y. 2000). "Prison medical staff is given wide discretion in determining how to treat inmates." Williams v. Smith, 2009 WL 2431948, *9 (S.D.N.Y.), recon. denied, 2009 WL 5103230 (S.D.N.Y. 2009). Thus, "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance, 143 F.3d at 703. Nevertheless, "[i]n

certain instances, a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan". <u>Id</u>.

Plaintiff's use of Coumadin, an anti-coagulant/blood thinner to aid in the prevention of blood clots, began in August 2008 when he suffered a stab wound, and was found to have a pulmonary embolism.  Deasis Affidavit [63-5], ¶9; Defendants' Rule 56(a) Statement of Material Facts [63-1], ¶10.  Although the record is not clear as to the periods of plaintiff's incarceration, since August 2008 he has not been consistently incarcerated at Monroe County Jail.  *See* Deasis Affidavit [63-5], ¶¶11-12.  Plaintiff "admits having a history of not taking [Coumadin] due to lack of medical insurance for about 1 or 2 months".  Plaintiff's Opposing Rule 56(a) Statement of Material Facts [71], ¶12.  While plaintiff's  initial daily dosage of Coumadin was 5 mg., at points it appears that his dosage was increased.  Plaintiff's Opposing Rule 56(a) Statement of Material Facts [71], ¶11.

On April 22, 2011 plaintiff was referred to the emergency room for leg swelling and he reported that "the jail took him off coumadin a year ago" [63-4], 104 of 112, Bates No. 43.[4]  At that time he was diagnosed with deep vein thrombosis (<u>id</u>.).  On May 3, 2011 he was admitted to Strong Memorial Hospital for a venogram and mechanical thrombectomy (<u>id</u>., p. 98 of 112, Bates No. 31).  Plaintiff was also started on 7.5 mg. of Coumadin and Fragmin for anticoagulation (<u>id</u>., pp. 98-99 of 112, Bates Nos. 31, 33).  He was discharged back to the Monroe County Jail and directed to follow-up with David L. Gillespie, M.D., as an out-patient

---

[4]     Although plaintiff states that Dr. Deasis terminated his Coumadin on June 4, 2010 (plaintiff's Opposing Rule 56(a) Statement of Material Facts [71], ¶16), the allegations of plaintiff's Complaint center on the treatment he received from July 23, 2011 through September 4, 2011.

(id., p. 98 of 112, Bates No. 31).  His discharge instructions included having "PT/INR drawn twice a week" (id.).

International Normalization Ratio ("INR") is a measurement of time it takes your body to clot.  Deasis Affidavit [63-5], ¶14.  The parties' dispute what INR is sufficient to afford some protection from blood clots.  Whereas Dr. Deasis states that it should be "more than 1.5" and "[i]deally" between 2.0 to 3.0 (Deasis Affidavit [63-5], ¶14), plaintiff states that "anything lower than 2.0 should be considered sub theriputic [*sic*]".  Plaintiff's Opposing Rule 56(a) Statement of Material Facts [71], ¶14.  Plaintiff's medical history shows that following the deep vein thrombosis plaintiff experienced on April 22, 2011, plaintiff underwent the following  series of INR measurements while at Monroe County Jail:

- April 24, 2011 - INR 1.12 ([63-4], p. 91 of 112,  Bates No. 21);

- April 27, 2011 - INR 1.52 (id., p. 90 of 112, Bates No. 20);[5]

- May 2, 2011 - INR 3.69 (id., p. 89 of 112, Bates No. 19);

- May 9, 2011 - INR 3.53 (id., p. 88 of 112, Bates No. 18);

- May 11, 2011 - INR 3.89 (id., p. 87 of 112, Bates No. 17);[6]

- May 19, 2011 - INR 2.16 (id., p. 86 of 112, Bates No. 16);

- May 25, 2011 - INR 2.07 (id., p. 85 of 112, Bates No. 15);

- June 1, 2011 - INR 2.09 (id., p. 84 of 112, Bates No. 14);

- June 22, 2011- INR 2.73 (id., p. 83 of 112, Bates No. 13);

- July 6, 2011 - INR 2.86 (id., p. 82  of 112, Bates No. 12); and

[5]      This INR contains a handwritten note - "↑coumadin".

[6]      This INR result contains a handwritten note -  "↓from 7.5 →5.0".

- July 20, 2011 - INR 3.58 (id., p. 81 of 112, Bates No. 11).

Because an INR in the 3.5 range put plaintiff at risk for internal bleeding, Dr.
Deasis states that he lowered his Coumadin dosage to 5 mg. on July 21, 2011.  Defendants' Rule
56(a) Statement of Material Facts [63-1], ¶20.  After plaintiff's Coumadin dosage was lowered,
plaintiff had an INR of 2.1 on July 27, 2011. [63-4], p. 80 of 112, Bates No. 10.   Although there
is a handwritten notation on the July 27, 2011 INR results that states "Recheck 1 wk",  Dr.
Deasis states that at that point, "based on the history of blood tests and pattern of result, a
monthly follow up of blood testing of [plaintiff] more than met the standard of case, since . . . he
was taking his usual historical dosage of Coumadin".  Deasis Affidavit [63-5], ¶20.

Plaintiff made a sick call request on August 17, 2011, which stated "I have not
been called for a PT INR for like 4 weeks".  [71-15], p. 2 of 6.  Although plaintiff alleges that he
was scheduled for a blood test on August 22, 2011, he states that it was never performed.
Plaintiff's Answer to First Set of Interrogatories [63-2], p. 5 of 56; Plaintiff's Opposing Rule
56(a) Statement of Material Facts [71], ¶26.  By contrast, defendants state that plaintiff refused
blood testing on August 23, 2011.  Defendants' Rule 56(a) Statement of Material Facts [63-1],
¶23.

On August 28, 2011 plaintiff was referred  and admitted to Strong Memorial
Hospital for swelling in his left extremity.  Defendants' Rule 56(a) Statement of Material Facts
[63-1], ¶24.  At that time he had an INR of 1.8 and his Coumadin dosage was increased and he
was started on Fragmin. [63-2], p. 51 of 56, Bates No. 47.  It was further noted that "[a]
hypercoagulation workup is indicated" (id.). On September 6, 2011 plaintiff was readmitted to
Strong Memorial Hospital, where he underwent  venogram and left iliac venous stenting,  and

was discharged the following day with no restrictions to his activities and continued on 5 mg. of Coumadin daily (id., pp. 52-54 of 56, Bates Nos. 48-50).

The parties dispute the cause of plaintiff's August 28, 2011 blood clot.  Plaintiff alleges that he developed the clot because his INR was 1.89.  Defendants' Rule 56(a) Statement of Material Facts [63-1], ¶21.  He argues that "[i]f further testing would of been done then it would of showed INR levels had continued downward to 1.89 becoming sub theriputic [sic] thus putting plaintiff at risk for reoccurring clots".  Plaintiff's Opposing Rule 56(a) Statement of Material Facts [71], ¶20(c).  By contrast, Dr. Deasis states that plaintiff developed the clot "because of his hypercoagulable state/disorder", which is "an abnormality of blood coagulation that makes the patient more prone to thrombosis - recurrent blood clots in blood vessels (despite being on blood thinners)".  Deasis Affidavit [63-5], ¶¶5, 23.[7]  Dr. Deasis also states that an INR of 1.89 would not have justified changing plaintiff's Coumadin dosage since that level is therapeutic (id., ¶22).

In support of their motion for summary judgment, defendants argue that "even if [Dr. Deasis] did deviate from acceptable standard of care with respect to the prescribed dosage of Coumadin in conjunction with the frequency of blood testing, [this] conduct would at most constitute negligence, which is insufficient to establish an Eighth Amendment violation".  Defendants' Memorandum of Law [63-6], pp. 4-5.[8]  I agree.  Indeed, when plaintiff was asked

---

[7]     Although defendants have identified Dr. Deasis Affidavit as being an "Expert Medical Affidavit" (see defendants' Memorandum of Law [63-6], p. 8), I have not afforded any special significance to his Affidavit based on that designation.

[8]     Interpreting the Complaint as also alleging a state law malpractice claim, defendants also argue that Dr. Deasis' actions were not the proximate cause of plaintiff's injury.  Defendants' Memorandum of Law [63-6], Point II.  However, the Complaint alleges only an Eighth Amendment violation.

during his April 19, 2012 N.Y. Gen. Mun. Law §50-h hearing whether Dr. Deasis lowered the

frequency of his blood work intentionally to cause him harm, plaintiff responded "I don't think

he did it intentionally, but I think he did it negligently, there's a difference . . . . I don't think he

did it intentionally to cause me harm, but I think in his negligence and his lack of experience as a

professional in the vascular field, he negligently didn't call me for blood work" [63-4], p. 55 of

112.  This concession is  fatal to his deliberate indifference claim.  *See* Brown v. Secretary of

Public Safety & Corrections,  2013 WL 4813757, *2  (W.D.La. 2013)("Plaintiff admits [the

defendants] were negligent. Thus, Plaintiff's claim has failed to satisfy the second component

of an Eighth Amendment claim"); Turrey v. Hartley,  2012 WL 6020011, *3  (E.D.Cal. 2012)

("[A]s Plaintiff admits, Baker negligently failed to appreciate the full extent of Plaintiff's

injury . . . . This does not demonstrate conduct which violates the United States Constitution").

            Plaintiff now argues that his earlier belief that Dr. Deasis was acting with mere

negligence has changed from the discovery obtained in this case.  He argues that his August 17,

2011 sick call request "notif[ied] Dr. Deasis of his negligence and the need for blood test.  At

which point Dr. Deasis with a cupable [*sic*] mind set acknowledged his negligence and scheduled

a blood test for August 22, 2011 thus taking him from mere negligence into the realm of medical

indifference."  Plaintiff's Opposing Rule 56(a) Statement of Material Facts [71], ¶29(B).

However, far from evidencing "criminal recklessness" (Hernandez, supra), this establishes that

Dr. Deasis was "alert and responsive to Plaintiff's sick call request". Defendants' Reply

Memorandum of Law [73], p. 5.  Moreover, from April 24 to July 27, 2011, Dr. Deasis regularly

monitored plaintiff's INR measurements and lowered his Coumadin level when he experienced

an elevated INR .  Plaintiff was also promptly provided with emergency treatment when he

complained of swelling in his leg.  *See* <u>Murray v. Ramineni</u>, 2011 WL 1315777, *20 (N.D.N.Y.),

<u>adopted</u> 2011 WL 1257123 (N.D.N.Y. 2011) ("the continuing treatment that Murray received

after he broke his ankle also militates against contentions of deliberate indifference").

Even if Dr. Deasis erred by failing to more regularly measure plaintiff's INR level

after he lowered the Coumadin dosage, there is nothing in the record to suggest that he was

acting with criminal recklessness.


### 4. Plaintiff's Rule 56(d) Application for Appointment of an Expert and/or Attorney

Plaintiff seeks the appointment of a medical expert and for  leave to file "expert

testimony and affidavit" in opposition to defendants' motion, which I have interpreted as an

application pursuant to Rule 56(d) to conduct discovery in order to oppose defendants' motion.

Plaintiff's Opposing Rule 56(a) Statement of Material Fact [71], ¶¶1, 2.

Although plaintiff has been granted *in forma pauperis* status, "[t]he plain

language of section 1915 does not provide for the appointment of expert witnesses to aid an

indigent litigant."  <u>Hannah v. United States</u>, 523 F.3d 597, 601 (5th Cir. 2008).  "Pursuant to Fed.

R. Evid. 706, a court may, on its own motion or on a motion by any party, appoint an expert

witness. The determination to appoint an expert rests solely in the Court's discretion and is to be

informed by such factors as the complexity of the matters to be determined and the Court's need

for a neutral, expert view . . . . The appointment of an expert pursuant to Rule 706 is not intended

to further partisan interests of any party, but to aid the Court, through the services of an impartial

expert in its assessment of technical issues."  <u>Byng v. Campbell</u>, 2008 WL 4662349, *7

(N.D.N.Y. 2008).

As discussed above, "[t]he deliberate indifference component of the Eighth Amendment inquiry is a subjective inquiry . . . . Therefore, expert testimony is not required in determining whether Defendants acted with deliberate indifference.  An analysis of a defendant's subjective state of mind differs from the involved objective inquiry required for medical malpractice cases, which delves into reasonable standards of medical care . . . .  In contrast, the subjective inquiry required does not involve  probing, complex questions concerning medical diagnosis and judgment . . . .  Nor does it involve the evaluation of complex scientific evidence. Moreover, Plaintiff is not requesting an expert because one is needed to assist the court or fact finder. Rather, Plaintiff requests an expert to assist himself. This falls outside the scope of appointment of an expert under Rule 706." Honeycutt v. Snider, 2011 WL 6301429, *2 (D.Nev. 2011).

Pointing to his *in forma pauperis* status and incarceration, plaintiff also appears to seek an attorney or investigative expert to depose Dr. Gillespie, the vascular expert who conducted his September 6, 2011 surgery.  Plaintiff's Opposing Rule 56(a) Statement of Material Fact [71], ¶¶2, 32.  This is not a "valid ground[ ] for appointment of counsel. If [it] were . . . , district judges would be required to request counsel for every indigent litigant who wanted to conduct deposition in his litigation and who thought that there was a potential for expert testimony." Richardson v. Zimmerman, 2008 WL 537781, *1  (C.D.Ill. 2008).  Therefore, I deny plaintiff's Rule 56(d) application.

**CONCLUSION**

For these reasons, I recommend that defendants' motions for leave to file a late

Answer [64] and for summary judgment [63] be granted. Unless otherwise ordered by Judge

Arcara, any objections to this Report and Recommendation must be filed with the clerk of this

court by March 30, 2015 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and

72(b)(2)).  Any requests for extension of this deadline must be made to Judge Skretny.  A party

who "fails to object timely . . . waives any right to further judicial review of [this] decision".

Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155

(1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments,

case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal

Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local

Rules of Civil Procedure, written objections shall "specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either certifying

that the objections do not raise new legal/factual arguments, or identifying the new arguments and

explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated:   March 13, 2015


                                                            /s/ Jeremiah J. McCarthy
                                                            JEREMIAH J. MCCARTHY
                                                            United States Magistrate Judge